UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LMD INTEGRATED LOGISTIC SERVICES, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>MERCER DISTRIBUTION SERVICES, LLC, a Washington limited liability company; and MERCER TRANSPORT, LLC, a Washington limited liability company,<br><br>Defendants. | CASE NO. C10-1381 BHS<br><br>ORDER DENYING PLAINTIFF'S MOTION OBJECTING TO THE SPECIAL MASTER'S REPORT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO ADOPT SPECIAL MASTER'S REPORT |

    This matter comes before the Court on Plaintiff LMD Integrated Logistic Services, Inc.'s ("LMD") motion objecting to the Special Master's report (Dkt. 128) and Defendants Mercer Distribution Services, LLC, and Mercer Transport, LLC's ("Mercer") motion to adopt the Special Master's report (Dkt. 131). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file

ORDER - 1

1  and hereby denies LMD's motion and grants in part and denies in part Mercer's motion
2  for the reasons stated herein.

3                           **I. PROCEDURAL HISTORY**

4  On August 26, 2010, LMD filed a complaint against Mercer for replevin and
5  money damages. Dkt. 1. On December 17, 2010, LMD filed an Amended Complaint.
6  Dkt. 28. LMD asserts causes of action of replevin, conversion, tortuous interference with
7  business expectancy, breach of the Washington Consumer Protection Act ("CPA"), and
8  damages in contract. *Id*. ¶¶ 15-34. The causes of action arose out of an agreement for the
9  storage and distribution needs of LMD's customer The Ingredients Company ("TIC").
10 *Id*.

11 On January 5, 2011, Mercer answered and asserted an untitled counterclaim that
12 appears to be a breach of contract claim. Dkt. 30 ¶¶ 39-55. On January 6, 2011, LMD
13 answered the counterclaim. Dkt. 31.

14 On September 13, 2011, LMD filed a trial brief. Dkt. 88. With regard to
15 accounting, LMD stated as follows:

16 > Integral to LMD's decision to engage Mercer was Mercer's agreement that billing for Mercer's services related to storage of TIC
17 > product would be, from the outset, implemented in 15-day cycles, i.e., that charges for each specified lot would be invoiced in 15-day increments.
18 > However, Mercer's accounting system was unable to accommodate 15-day billing cycles, it being designed only for 30-day cycles. Therefore, the
19 > parties agreed that LMD, whose accounting system could administer 15-day cycles, would prepare the invoices itself. Mercer accepted without
20 > objection LMD's payments for all services related to TIC product, each made with an accompanying LMD-generated invoice, between July 2009
21 > and August 2010.

22

1  *Id*. at 3. LMD also stated "it has suffered total principal damages in the amount of

2  $41,602.45 as a result of Mercer's wrongdoing." *Id*. at 6.

3        On October 3, 2011, LMD filed proposed findings of fact and conclusions of law.

4  Dkt. 91. LMD requested that the Court adopt an overpayment finding of fact as follows:

5        Testimony and evidence demonstrated that Mercer's allegations
against LMD regarding outstanding balances for unpaid invoices are
6        factually unfounded and inaccurate. In fact, LMD did not owe Mercer any
unpaid charges for any services. To the contrary, LMD had overpaid its
7        obligations to Mercer by $26,206.93.

8  *Id*. at 4.

9        On October 4, 2011, the Court commenced a two-day bench trial. *See* Dkts. 93–

10  94. Before trial began, Mercer's counsel made a motion to strike LMD's overpayment

11  claim. Dkt. 120 at 3. The basis for the motion was that "at no point in this case has the

12  subject of a $26,000 overpayment by LMD to Mercer ever been raised, and it came to

13  light only last night and took the form of a proposed finding of fact." *Id*. at 5. LMD

14  countered that

15        It was only when we reviewed tables presented after discovery by
Mercer themselves summarizing their own case, their own accounting, that
16        we learned that by their own evidence, that we had overpaid -- it was
actually about $26,000.

17  
*Id*.
18  
      During trial, the parties submitted thousands of pages of invoices, shipment and
19  
delivery orders, warehouse receipts, and other documents evidencing the parties'
20  
transactions. Dkt. 85 at 13–25. Early in the trial, the Court expressed its disappointment
21  
with the parties document dump on the Court stating that "to bring this evidence into the
22

Court when this is a purely accounting function, a [Certified Public Accountant ("CPA")] could have audited this, made a report, [and] we could have looked at it." Dkt. 120 at 59.

> The Court here is not a CPA. This is what bothers me, that we are going to try and get through all of this -- through testimony about what is and what isn't, and this is just an auditing issue, it seems to me, and that then with a professional auditor, these discrepancies can be explained or not explained. And to do it this way, as I said, I am disappointed, is just what comes to mind here.

*Id*. at 62.

Ultimately, the Court appointed a CPA, Steven Roberts, at the parties' expense. Dkt. 114.  Mr. Roberts' duties were as follows:

> (1) Review, examine and consider, in accordance with generally accepted accounting standards, all evidence submitted by the parties concerning the financial transactions between LMD and Mercer, between December 2005 and August 25, 2010;
> (2) Based on the invoices Mercer issued to LMD, payments Mercer received from LMD, and Mercer's accounting calculations, determine (i) whether LMD owes any unpaid sums to Mercer; (ii) whether LMD has paid all invoiced sums; (iii) whether LMD overpaid any sums invoiced to it by Mercer; and (iv) the specific amount of any unpaid or overpaid sums; and
> (3) Based on the invoices and checks LMD issued to Mercer, determine (i) whether LMD owes any unpaid sums to Mercer; (ii) whether LMD has paid all invoiced sums; (iii) whether LMD overpaid any sums invoiced to it by Mercer; and (iv) the specific amount of any unpaid or overpaid sums.

*Id*. at 2.

On April 24, 2012, the Mr. Roberts submitted a 137-page report.  Dkt. 126 ("Report").  Mr. Roberts summarized his findings as follows:

> I reviewed, examined, and considered, in accordance with generally accepted accounting standards (i.e. generally accepted accounting principles or "GAAP"), all evidence submitted by the parties concerning the financial transactions between LMD and Mercer, between December 2005 and August 25, 2010.

ORDER - 4

>      Then,
>           1. Based on the invoices Mercer issued to LMD, payments
>      Mercer received from LMD, and Mercer's accounting calculations, I
>      determined LMD owes Mercer **$13,893.40** in unpaid sums, and
>      Next,
>           2. Based on the invoices and checks LMD issued to Mercer, I
>      determined LMD owes Mercer **$3,658.34**.
>      After this, at the request of legal counsel for both parties, I combined these
>      amounts with prospective additional Mercer storage and handling or "back bill
>      charges" concluding that:
>           1. Unpaid LMD sums owing Mercer, according to Mercer's
>      accounting records, $13,893.40, plus back bill charges, **$11,262.48**,
>      equals **$25,155.88**, and
>           2. Unpaid LMD sums owing Mercer, according to LMD's
>      records, $3,658.34, plus back bill charges, **$14,473.48**, equals
>      **$18,131.82.**

*Id*. at 2–3.

With regard to the work performed, Mr. Roberts included a separate section detailing the work undertaken and the fees billed. *Id*. § 6. Mr. Roberts provided as follows:

>      The work performed was significantly more involved than originally
>      anticipated. To properly account for the activity between the parties in
>      accordance with GAAP back to 2005, a greater amount of reconciling work
>      and a significantly increased amount of individual line item testing was
>      necessary. In the end, the primary cause of this high cost is attributable to:
>           1. <u>LMD's and Mercer's Independent Accountings</u> - Each party
>      maintained its own record of the fees earned by Mercer and the proper
>      application of LMD payments. LMD as a customer of Mercer sent invoices
>      to Mercer, its service provider, in an unusual arrangement. Each party was
>      concerned with its own accounting and, it appears, much less focused with
>      typical and critical reconciling activities.
>           Based upon my experience with other cases, this was a recipe for
>      difficulties and mistrust between the parties. In the end, both Transport
>      charges and Distribution charges needed to be reconciled, not just
>      Distribution charges as originally thought, and nearly every Distribution
>      charge dating back to July 2009 needed to be examined, not just the later
>      months as initially believed.

> While the parties' rolling balance of amounts due Mercer by LMD were sometimes close at month-end, the reality is that the parties were far apart on the calculation and measure of proper charges and application of payments against those charges.
>
> 2. <u>Absence of normal processes/First time accounting functions</u> - LMD requested and Mercer agreed to an unusual means of accounting for activity between the parties outside of Mercer's normal accounting practices. LMD crossed out "Charge to" and put "Payable to" on its own invoice blanks. Mercer developed a new spreadsheet to capture its business with LMD.

*Id*. at 1–2. In other words, regardless of any transportation and warehousing agreement between the parties, it appears that they were never on the same page as to accounting.

On May 15, 2012, the parties filed the instant motions. On May 29, 2012, LMD responded to Mercer's motion. Dkt. 132. On May 30, 2012, Mercer responded to LMD's motion. Dkt. 134. On May 31, 2012, LMD moved to strike Mercer's response because the response was untimely and overlength. Dkt. 135. On June 1, 2012, the Court granted the parties' stipulated motion to allow Mercer to file an amended response and renoted the parties' motions. Dkt. 138. On June 5, 2012, Mercer filed an amended response (Dkt. 140) and replied to LMD's response to Mercer's motion (Dkt. 139). On June 8, 2012, LMD replied to Mercer's response to LMD's motion. Dkt. 141.

## II.  DISCUSSION

In acting on a master's order, report, or recommendations, the court must give the parties notice and an opportunity to be heard; may receive evidence; and may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with

1  instructions. Fed. R. Civ. P. 53(f)(1). The court must decide de novo all objections to
2  findings of fact made or recommended by a master . . . . *Id*. 53(f)(3).

**A.  LMD's Motion**

LMD presents two evidentiary issues and two legal issues. Dkt. 128 at 2. The legal issues are (1) when the parties amended the rate schedule and (2) whether the parties entered into an exclusivity agreement. These issues will be addressed in the final findings of fact and conclusions of law.

With regard to the evidentiary issues, both issues involve documents that Mercer submitted to Mr. Roberts. LMD argues that the documents Mercer submitted were not produced in discovery and are not authentic. The Court has already ruled that the Special Master may review all documents relating to the transactions between the parties to resolve the prejudice LMD created by the untimely overpayment claim. Dkt. 113 at 2. With regard to authenticity, the Special Master accepted the documents according to generally accepted accounting principles. The fact that the documents were hand generated spreadsheets with conflicting testimony whether invoices were mailed to LMD goes to the weight of the evidence, an issue that will be resolved with the Court's ultimate findings of fact. Therefore, the Court denies LMD's motion to exclude portions of the Report.

**B.  Mercer's Motion**

Mercer moves the Court to adopt the Report, accept the Special Master's files, and allocate fees between the parties. Dkt. 131 at 1–2. First, the Court adopts the report

because Mr. Roberts delivered exactly what the Court asked: a comparison of damages based on the parties' accounting documents.

Second, the Court accepts all of the documents submitted to the Special Master as part of the record. The Court has already dismissed LMD's argument that some of Mercer's documents should be rejected because of discovery violations.

Third, the Court declines to divide fees disproportionally between the parties. Damage calculations should have been completed prior to trial instead of the massive document dump that occurred in this matter. From the Court's perspective, both parties are responsible for the length and cost of a matter that should never have proceeded this far.

Therefore, the Court grants Mercer's motion in part and denies it in part.

## III.  ORDER

Therefore, it is hereby **ORDERED** that LMD's motion objecting to the Special Master's report (Dkt. 128) is **DENIED** and Mercer's motion to adopt the Special Master's report (Dkt. 131) is **GRANTED in part** and **DENIED in part**.

Final proposed findings of fact and conclusions of law are due 9/12/12.

Closing argument are set for 9/19/12 at 10:00.

Dated this 29th day of August, 2012.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 8