UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LMD INTEGRATED LOGISTIC
SERVICES, INC.,

        Plaintiff,

v.

MERCER DISTRIBUTION SERVICES,
LLC, et al.,

        Defendants.

CASE NO. C10-1381 BHS

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

This matter comes before the Court on a three-day bench trial that occurred on October 4 and 5, 2011, with closing arguments on September 19, 2012.

## I. INTRODUCTION

Each party asked the Court to conclude that the other party breached a contract. This, however, is a difficult decision when the parties fail to agree on exactly what it was that they agreed to. Such problems may arise out of the most carefully drafted written agreements. It is little wonder, however, when disputes arise from an oral contract.

ORDER - 1

Although Plaintiff LMD Integrated Logistic Services, Inc. ("LMD") brought this action, it considers itself a defendant having been placed in the position of seeking court intervention because it was confronted with the seizure of its customer's product.  On the other hand, Defendants Mercer Distribution Services, LLC ("Mercer Distribution") and Mercer Transport, LLC ("Mercer Transport") (collectively "Mercer") contend that they were unnecessarily dragged into a lawsuit over a dispute that could have been resolved in a more expeditious and prudent matter.  Both are right.

Mercer failed to persuade the Court either (1) that LMD failed to pay what Mercer asserts were the agreed rates for storage and distribution of services; or (2) that LMD violated an alleged exclusivity agreement. In this case, the one established and controlling fact is that the parties agreed that LMD would do the invoicing on a 15-day billing cycle.  Through that process the billings must be deemed accurate unless Mercer can demonstrate that it clearly protested these bills in some manner. Mercer was unable to show any alleged dispute.  In fact, Mercer's employees, Karen Journigan and Debra Nelson, testified that, between January and April of 2010, they knew of no accounting discrepancies.  This direct evidence was supported by circumstantial evidence of the meeting on May 17, 2010 between the principals of the parties, Louis Diblosi from LMD and Allen Nielson from Mercer. The Court finds that it is highly unlikely that the parties would meet to discuss current issues regarding the business relationship and the prospects of future business, yet fail to discuss significant billing discrepancies arising from disputed rates. Therefore, the Court adopts the accounting performed by the Special Master Steve Roberts using LMD's invoices.

Based on these invoices, LMD established that the warehouseman's lien was not validly asserted. Even so, LMD has failed to persuade the Court that Mercer's actions violated the Washington State Consumer Protection Act.

After extensive pretrial practice, a three-day bench trial and a substantial audit performed by Mr. Roberts, the Court finds that the "bottom line" –to employ an overused but appropriate phrase in this case–in a dispute that generated so much cost for the parties is that the evidence yields a modest judgment for LMD in the amount of $39,289.91.

Accordingly, the Court makes the following findings of facts and conclusions of law:

## II. FINDINGS OF FACT

1. LMD is a third-party logistics company. As such, it manages its customers' inventory throughout the supply chain, including the transportation, storage, documentation and distribution of its customers' freight.

2. Defendants Mercer Distribution and Mercer Transport are related and commonly owned and operated companies. Defendant Mercer Distribution provides warehousing, logistics and distribution services, and defendant Mercer Transport provides motor carrier transportation services in western Washington.

3. LMD and Mercer transacted business beginning in 2005.

4. In or about June 2009, Mercer's principal, Allen Nielson ("Nielson"), traveled to LMD's California office to visit LMD's principal, Louis Diblosi ("Diblosi"). At this meeting, Neilson and Diblosi discussed the required storage, distribution and transportation services in Washington State of LMD's customer, The Ingredients

Company ("TIC"), for TIC's wheat gluten and potato starch products. Nielson made representations about Mercer's capacities and offered LMD terms which LMD relied on and accepted for the TIC business.

5. Integral to LMD's decision to engage Mercer was the parties' agreement, from the inception of the TIC business, that billing for services of Mercer Distribution related to storage of TIC product would be implemented on 15-day cycles, i.e., that charges for each specified lot would be invoiced in 15-day increments. Mercer's accounting system could not administer 15-day billing cycles. Mercer agreed to this arrangement from the inception of the TIC business.

6. LMD generated and issued to Mercer Distribution invoices for each 15-day cycle and paid Mercer Distribution in accordance with that accounting.

7. Mercer Distribution alleges that it issued invoices and mailed them to LMD. LMD contends that it never received Mercer's invoices. The Court finds that Mercer's invoices, if they did exist, are irrelevant because the parties agreed that LMD would control the billing and accounting.

8. LMD issued invoices for Mercer Distribution's services between July 2009 and August 2010 against which LMD paid all charges without comment, protest or other expression of discontent from Mercer. LMD's invoices were based on the rates the parties agreed to as stated in the Special Master's Report, Section 7, chart labeled "Per LMD Accounting." Dkt 123-6 at 26.

9. Between June 2009 and August 2010, LMD tendered to Mercer Distribution for storage and distribution TIC product as such product arrived in Washington through the Port of Tacoma and the Port of Seattle.

10. Mercer Distribution offered as trial exhibits copies of warehouse receipts it claims it issued for TIC product only in April 2010 and later, and did not offer as evidence any receipts for dates prior to April 2010. The receipts are not statutorily compliant. The post-April 2010 warehouse receipts Mercer Distribution offered as trial exhibits document at most a portion, and perhaps none, of the TIC product Mercer Distribution accepted from LMD for storage and distribution.

11. Mercer's employees, Karen Journigan and Debra Nelson, testified that, between January and April of 2010, they knew of no accounting discrepancies between LMD and Mercer.

12. On May 17, 2010, Diblosi and Nielson met to discuss business. There is no evidence in the record that they discussed billing disputes at this meeting.

13. In or about August 2010, LMD issued directives to Mercer Distribution for the release and transport of portions of 802,400 pounds of wheat gluten and potato starch owned by TIC which was in Mercer Distribution's possession (the "Subject Property").

14. The parties contest the Subject Property's value: LMD alleges that the value was approximately $1,600,000, and Mercer alleges that the value was approximately $200,000. Regardless, the value was at minimum five times more than the amount that Mercer alleged LMD owed.

15. Mercer Distribution refused to release any of the Subject Property, asserting that LMD had violated an alleged obligation to warehouse all of its Washington freight with Mercer Distribution. Mercer Distribution claimed that the storage rates it had charged for the Subject Property had been discounted based on a commitment from LMD for all of its Washington freight, and that LMD was obligated to pay Mercer $38,266.56 (modified from an original claim of $35,321.61) to cover the difference between the discounted rates and Mercer Distribution's standard rates.

16. Mercer Distribution asserted a possessory lien on the Subject Property pursuant to RCW 62A.7-209. Mercer later asserted that the $38,266.56 it claims LMD owes consists of $22,367.22 LMD allegedly short paid in invoices Mercer issued between April 30 and July 31, 2010; and $15,899.34 in "back charges" allegedly to recompense Mercer Distribution for the rates it claims it discounted based on LMD's alleged commitment to store all of its freight with Mercer Distribution.

17. There is no written contract between the parties. The parties reached an oral agreement whereby LMD would warehouse with Mercer Distribution all of its Washington freight owned by TIC that required warehousing services over a one-year period at agreed rates. Mercer also would provide other transportation and distribution services for LMD's TIC product in Washington on an as-needed and non-exclusive basis.

18. The evidence in the record does not support Mercer's allegations against LMD regarding outstanding balances for unpaid invoices.

19. The evidence in the record does not support a "backcharge" provision in the parties' agreement.

1     20.     After Mercer retained the Subject Property, LMD withheld $2,312.54 in
2 charges that would have become due for payment.

3     21.     The Special Master's Report indicates a balance of $677.60 described as
4 "Plus Carryforward balance of all activity – Transit & Distribution – 12/1/05 – 11/30/09."
5 LMD disputes this balance because it predates the parties' relationship with respect to
6 storage and distribution of TIC product and it also predates the time period in which
7 Mercer witnesses testified any significant accounting discrepancy existed. The Court
8 agrees and finds that it should not be included in settling the accounts that are the subject
9 of this action.

10    22.     The Special Master's Report indicates a balance of $649.31 due to Mercer
11 Transport. LMD disputes this balance because no invoice or other evidence demonstrates
12 it.  Moreover, LMD contends that Mercer Transport is not a warehouseman and would
13 have no basis to assert a warehouseman's lien.  The Court agrees and finds that it should
14 not be included in settling the accounts that are the subject of this action.

15    23.     The Special Master's Report suggests Mercer Distribution applied an
16 "Initial Storage Charge Adjustment" of $65.44 to LMD's account. LMD contends that no
17 persuasive evidence in the record supports this charge.  The Court agrees and finds that it
18 should not be included in settling the accounts that are the subject of this action.

19    24.     The $3,658.34 imbalance was not a proper basis for Mercer to detain the
20 Subject Property, because when adjusted per the above findings, the accounting presents
21 a $44.65 overpayment by LMD ($3,658.34 – $2,312.54 (charges that accrued after the
22 wrongful detention) – $649.31 (disputed Mercer Transport balance that is unsupported by

evidence and could not be the basis of a warehouseman's lien) – $677.60 (disputed balance from November 2009 that is unsupported by persuasive evidence and refuted by Mercer's own witnesses) – $65.44 (unsubstantiated "Initial Storage Charge Adjustment") = ($44.65).

25. Mercer Distribution released the Subject Property at its warehouse facility to LMD shortly after LMD posted a bond with the Court.

26. LMD incurred costs in the amount of $43,000 when the Subject Property had been invoiced to and collected from TIC. LMD negotiated a $20,000 settlement with TIC for those repositioning costs. LMD paid this sum.

27. LMD incurred $6,458.02 in costs to motor carrier Schneider Logistics to transport the Subject Property from Mercer Distribution's facility and an additional $10,350.00 in transportation costs of substitute product needed to satisfy LMD's third-party contractual obligations.

28. LMD incurred $2,870 to have a survey conducted of the Subject Property to ensure Mercer Distribution released the Subject Property in good order and condition, after 50 bags of TIC product could not be located.

29. LMD incurred $1,924.43 in logistical expenses to attend to the withheld property, including administrative and travel costs.

30. The sum of these costs is $41,602.45.

### III. CONCLUSIONS OF LAW

1. Mercer Distribution is not entitled to recover from LMD higher charges retroactively, as there was no meeting of the parties' minds and no exclusivity agreement.

2. Mercer Distribution wrongfully detained goods which were not the subject of any alleged underpayment, as is prohibited by RCW 62A.7-209(1). A warehouseman's lien is limited to property which is the subject of unpaid storage charges or other claim. The Subject Property was not the subject of Mercer Distribution's claims to unpaid charges.

3. The Court may consider extrinsic evidence as to the parties' agreement, as there is no integrated, written contract. The course of dealing between the parties is such extrinsic evidence which the Court may consider. LMD issued invoices for Mercer Distribution's services between July 2009 and August 2010 against which LMD paid its storage charges without comment, protest or other expression of discontent from Mercer Distribution. This course of dealing confirms the parties' understanding and agreement.

4. Mercer Distribution materially breached its agreement with LMD as follows: (1) it failed to comply with law mandating issuance of adequate warehouse receipts; (2) it refused to comply with the parties' agreement regarding pricing and services; and (3) it refused to release the Subject Property on demand, asserting an invalid warehouseman's lien. Accordingly, Mercer Distribution is barred from enforcing terms of the parties' agreement against LMD.

5. Mercer proximately caused LMD's $20,000 reimbursement to TIC. This sum was a reasonable mitigation of damages. Therefore, the Court awards LMD $20,000 against Mercer.

6. Mercer proximately caused LMD to incur $6,458.02 in costs to transport the Subject Property from Mercer's facility to TIC's customers after Mercer Distribution

1 finally released it. This sum is reasonable. Therefore, the Court awards LMD $6,458.02
2 against Mercer.

3     7.    Mercer proximately caused LMD to incur $10,350 in transportation costs to
4 have substitute product delivered so as to satisfy LMD's contractual obligations to TIC
5 and TIC's customers while the Subject Product was being detained. This sum is
6 reasonable. Therefore, the Court awards LMD $10,350 against Mercer.

7     8.    Mercer proximately caused LMD's survey cost of $2,870 to ensure Mercer
8 Distribution released all lots of the Subject Property in good order. This sum is
9 reasonable. Therefore, the Court awards LMD $2,870 against Mercer.

10     9.    Mercer proximately caused LMD to incur $1,924.43 in incidental expenses
11 to attend to the wrongfully withheld property, including administrative and travel costs.
12 This sum is reasonable and is recoverable under Washington law. Therefore, the Court
13 awards LMD $1,924.43 against Mercer.

14     10.    Mercer has failed to demonstrate the allegations of its counterclaim, i.e.,
15 that LMD owes it any sums based on proper storage, transportation or other service
16 charges, and that LMD owes Mercer retroactively higher charges based on an alleged
17 violation of an exclusivity agreement. Mercer's counterclaim is therefore dismissed with
18 prejudice.

19     11.    The total amount of damages Mercer owes LMD is $39,289.91, which is
20 LMD's $41,602.45 in damages minus LMD's $2,312.54 in unpaid storage fees.

## IV. ORDER

Therefore, it is hereby **ORDERED** that the Court **FINDS** for LMD and the Clerk is directed to enter **JUDGMENT** for LMD against Mercer for $39,289.91.

Dated this 24th day of September, 2012.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge